BRETTON RIDGE HOMEOWNERS CLUB, APPELLANT, *v.* DEANGELIS ET AL., APPELLEES.

(No. 48466 — Decided
February 4, 1985.)

*Gareau & Dubelko* and *Michael R. Gareau,* for appellant.
*Mark H. Knevel,* for appellees.

ANN McMANAMON, J. The Bretton Ridge Homeowners Club ("the Club") initiated a declaratory judgment action in the Rocky River Municipal Court, naming certain of its members as parties-defendants. The Club now timely appeals a summary judgment entered in favor of defendant-appellees ("the dissenters"), who are owners of parcel numbers 1, 2, 3, 4 and 4-A of the Bretton Ridge Subdivision.

Every lot in Bretton Ridge Subdivision is subject to recorded covenants, conditions, and restrictions defined in a document entitled "Declaration of Restrictions" which was recorded in the office of the Cuyahoga County Recorder by developer Saul Biskind on December 14, 1964. Pursuant to the terms of this document, all lot owners are required to be members of the Club, which is structured as a non-profit Ohio corporation organized to maintain a park and recreational facility located within the subdivision.

In this recorded instrument, the developer also set forth the Club's Code of Regulations which includes provisions for membership, with membership dues not to exceed fifty dollars per year, unless otherwise determined by a two-thirds' vote of the membership, and assessments in amounts to be determined by a three-fourths' membership vote. Under the terms of the instrument, membership in the Club cannot be severed from the ownership of any parcel in the development.

On May 7, 1981 and March 29, 1982, the Club adopted, by majority vote, five amendments[1] to the Code of Regulations and subsequently caused them to be recorded in place of the original instrument.[2]

On July 17, 1983, the Club filed the subject action which sought to have the Rocky River Municipal Court "determine the validity of certain amendments to Declaration of Restrictions, recorded in the Cuyahoga County Recorder's office * * * and further * * * determine the rights and legal relationship of certain owners of realty located in Bretton Ridge Subdivision No. 4(A)."

The dissenters, approximately forty in number, contended in their summary judgment motion that any amendment to the grantor's (developer Biskind's) restrictive covenant must be by the unanimous vote of all those bound by the covenant. They argued that since the Club failed to acquire that consent, the dissenters were entitled to summary judgment.

The Club, in its brief, countered that the amendment of a restrictive covenant was not involved, but rather, an amendment to the regulations of a non-profit corporation, which, under R.C. 1702.11(B), requires only a majority vote of the members present at a meeting, if a quorum is present.

---

[1] See Appendix at 69.

[2] The record does not disclose when these amendments were recorded in the county recorder's office.

On March 8, 1984, the trial court granted summary judgment in favor of the dissenters.

Appellant appeals from this judgment citing three assignments of error:

I

"The Rocky River Municipal Court erred in granting summary judgment to appellees, dissenting homeowners, where it misconstrued the Declaration of Restrictions and original Code of Regulations of appellant Bretton Ridge Homeowners Club and held that five amendments of the Code of Regulations, adopted on May 7, 1981 and March 29, 1982, with less than the unanimous consent of all of the homeowners in the Bretton Ridge Subdivision of North Olmsted, Ohio, impermissibly increased the burden of the covenants contained in the Declaration of Restrictions, by making membership in the homeowners club mandatory, whether or not the recreational facilities of the Club were, in fact, utilized by the homeowner."

II

"The Rocky River Municipal Court erred in granting summary judgment to appellees, dissenting homeowners, where it held that the fifth amendment adopted impermissibly increased the burden of the covenants contained in the Declaration of Restrictions by granting appellant the authority to impose liens against the real property of homeowners who failed to pay their pro rata share of the assessments made by appellant for its annual operating expenses."

III

"The Rocky River Municipal Court erred in failing to dismiss appellant's complaint, *sua sponte*, for want of subject matter jurisdiction, where upon reviewing the pleadings and entertaining appellees' motion for summary judgment, it determined that the controversy between these parties required it to make a declaration of rights under and to construe the provisions of a restrictive covenant deed, a real property law cause of action not within the limited subject matter jurisdiction of Ohio Municipal Courts."

We find it appropriate to address the jurisdictional issue raised in the third assignment of error first.[3]

The Club argues that the trial court erred in not dismissing the complaint for want of subject matter jurisdiction. It contends that the issues presented in this action involve matters of real property law which are outside the limited jurisdiction of a municipal court.

The dissenters, on the other hand, maintain that this is an action at law based on contract and that, as a result, the trial court had jurisdiction to determine and resolve all of the issues before it.

Municipal courts can exercise only such powers as are conferred upon them by statute. *State, ex rel. Foreman,* v. *Bellefontaine Municipal Court* (1967), 12 Ohio St. 2d 26 [41 O.O.2d 159]; *State, ex rel. Talaba,* v. *Moreland* (1936), 132 Ohio St. 71 [7 O.O. 195], paragraph three of the syllabus; *State, ex rel. Finley,* v. *Miller* (1934), 128 Ohio St. 442, 443; *Soul* v. *Lockhart* (1928), 119 Ohio St. 393, 396. A municipal court has the power to grant relief by declaratory judgment within the limits of its subject matter jurisdiction. *State, ex rel. Foreman, supra,* at 28.

R.C. 1901.18 delineates those matters over which a municipal court has jurisdiction. In pertinent part it provides:

"Subject to section 1901.17[4] of the

---

[3] We note that an objection for want of jurisdiction may be raised for the first time on appeal. *Jenkins* v. *Keller* (1966), 6 Ohio St. 2d 122 [35 O.O.2d 147], paragraph five of the syllabus.

[4] R.C. 1901.17 provides that the municipal court shall not have jurisdiction in cases where the claimed amount exceeds $10,000.

Revised Code, a municipal court has original jurisdiction within its territory:

"(A) In any civil action, of whatever nature or remedy, wherein judges of county courts have jurisdiction;

"(B) In any action or proceeding at law for the recovery of money or personal property of which the court of common pleas has jurisdiction;

"(C) In any action at law based on contract, to determine, preserve, and enforce all rights, legal and equitable, involved therein, to decree an accounting, reformation, or cancellation of the contract, and to hear and determine all legal and equitable remedies necessary or proper for a complete determination of the rights of the parties thereto."

The issue raised in this appeal is whether the declaratory judgment complaint presents an "action at law based on contract" (per R.C. 1901.18[C]), sufficient to confer jurisdiction on the Rocky River Municipal Court.

Although this cause was styled a declaratory judgment action, we find that the relief actually sought by the Club is the enforcement of a recorded covenant.[5]

An action to enforce a grantor's covenant which imposes restrictions on a grantee's subsequent use of the property, is equitable in nature and is governed by the principles applicable to equity actions. See, e.g., Stines v. Dorman (1874), 25 Ohio St. 580; McGuire v. Caskey (1900), 62 Ohio St. 419; Brown v. Huber (1909), 80 Ohio St. 183.

Although a municipal court has jurisdiction to deal with equitable issues that arise in an action at law upon a contract, so as to enable the court to render a determination of the rights of the parties, that jurisdiction must be properly invoked pursuant to R.C. 1901.18. Behrle v. Beam (1983), 6 Ohio St. 3d 41. Specifically, division (C) of that section confers original jurisdiction "[i]n any action at law based on contract."

Since we have determined that this is an action in equity, rather than at law, the municipal court was without subject matter jurisdiction to consider this cause.

We also note that the Club invoked the court's jurisdiction "to determine the validity of certain amendments to the Declaration of Restrictions, recorded in the Cuyahoga County Recorder's office * * *." The recording of this document and its legal effect are both governed by the provisions of R.C. Chapters 5309 and 5310 which pertain to the "Registrations of Land Titles." R.C. 5309.02 confers exclusive jurisdiction upon all matters arising under these chapters in the court of common pleas and the probate court.[6]

As a consequence, we find that the Rocky River Municipal Court was without subject matter jurisdiction over this cause and that the Club's third assignment of error is well-taken. Since the trial court was without jurisdiction, it is not proper for this court to pass upon the other issues raised in the case

---

[5] It should be also noted that the claim for money damages alleged in the second count of appellant's complaint is also premised on the enforceability of the recorded covenant.

[6] R.C. 5309.02 provides in pertinent part:

"Concurrent jurisdiction, except as otherwise provided, is hereby conferred upon the court of common pleas and the probate court in all matters arising under sections 5309.02 to 5310.21, inclusive, of the Revised Code. The probate court shall have all the powers at law and in equity of a court of general jurisdiction as to such matters. * * * Such court may inquire into the condition of the title to all interests in land, legal or equitable, or any lien, charge, or encumbrance thereon, and make all orders, judgments, and decrees necessary to settle, as against all persons known and unknown, in being or unborn, such title or interest, and all liens and encumbrances existing therein and their order and preference, and remove clouds from such title and forever quiet and settle the title."

until after they are properly brought in the forum provided by statute. Cf. *Shidler* v. *Piedmont Land Co.* (1934), 50 Ohio App. 256, 260-261 [1 O.O. 168]. See, also, *Wabash RR. Co.* v. *Fox* (1901), 64 Ohio St. 133, 146; *Children's Home of Marion Cty.* v. *Fetter* (1914), 90 Ohio St. 110, 128; *Wells* v. *Wells* (1922), 105 Ohio St. 471, 478.

The judgment of the Rocky River Municipal Court is reversed and the matter is remanded to the trial court for an order of dismissal.

*Judgment accordingly.*

MARKUS, P.J., and JACKSON, J., concur.

### APPENDIX

The first amendment, adopted May 7, 1981, and entitled "Issue No. 1," amended Section 1, Article I, of the Code of Regulations by conditioning a homeowner's membership in the Club on the timely payment of his *pro rata* share of the Club's annual assessments for operating expenses.

The second amendment, also adopted May 7, 1981, and entitled "Issue No. 2," amended Section 1, Article II, of the Code of Regulations and provided that members who failed to pay their share of the annual assessments would lose their voting privileges so long as they were thus delinquent.

The third amendment, also adopted on May 7, 1981, and entitled "Issue No. 3," amended Section 2(A), Article II, of the Code of Regulations by providing that, during the period of grantor Saul Biskind's exclusive voting rights, each member's *pro rata* share of the annual expenses could be increased to an amount greater than fifty dollars only upon the affirmative vote of a majority of the members present at a meeting attended by a majority of the Club members *in good standing.*

The fourth amendment, also adopted on May 7, 1981, and entitled "Issue No. 4," amended Section 1, Article XI, of the Code of Regulations and provided for the creation of three separate classes of membership with different *pro rata* shares of the assessments for annual expenses of the Club based upon the members and/or the extent to which they utilized the Club's facilities, and amended Section 2, Article XI, by limiting the requirement of a three-fourths' vote on major improvement expenditures to *capital* improvements only.

The fifth amendment, adopted approximately one year later on March 29, 1982, created new Sections 4 and 5 of Article XI of the Code of Regulations, and therein provided for the creation, perfection and enforcement of liens against the real property of members who failed to pay their *pro rata* share of the annual assessments for operating expenses, and further provided that no member could exempt himself from liability for his *pro rata* share of the assessments by "waiver" of the use or enjoyment of the recreational facilities of the Club.